UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TRAIAN BORDIANU,

                               Plaintiff,                    **MEMORANDUM & ORDER**

   -against-

                                                                      07-CV-1762 (NG) (LB)

EDUCATIONAL BROADCASTING
CORPORATION,

                               Defendant.
------------------------------------------------------------X

**GERSHON, United States District Judge:**

This is an employment discrimination action brought by *pro se* plaintiff Traian Bordianu under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et. seq.*, against his former employer, Educational Broadcasting Corporation ("EBC"), alleging that EBC unlawfully forced Mr. Bordianu into retirement. Defendant EBC filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted on the ground that plaintiff failed to timely file a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") within the statutorily prescribed deadline. Plaintiff in turn has filed an Affidavit in Opposition to Defendant's Motion to Dismiss.

**FACTS**

The following facts alleged in the Complaint and documents incorporated by reference are taken as true for purposes of this motion:[1]

---

[1] In general, when a court considers a Rule 12(b)(6) motion to dismiss, the court will limit itself to facts stated in the Complaint, documents attached to the Complaint as exhibits, and documents incorporated by reference. *See Dangler v. N.Y.C. Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). Documents attached to Mr. Bordianu's Complaint include: (1) letter to Peter Quaranta, dated August 2005; (2) letter to Donald Siegal, dated June 24, 2006; (3) letter from Donald Seigal to Mr. Bordianu, dated July 6, 2006; (4) excerpts from the Collective Bargaining Agreement; and (5) the seniority list at EBC for Local 1212. Mr. Bordianu's EEOC

Plaintiff Traian Bordianu is a seventy-six year old immigrant, who was employed by defendant EBC as a Maintenance and Repair Engineer for over twenty-two years until retiring on October 21, 2005. In August or September of 2005, Mr. Bordianu was notified by EBC's management that he must either accept a significantly different job on the night shift or leave the company.[2] Mr. Bordianu found the new position unacceptable because of his health and also because he had attained the highest seniority in the Broadcast Maintenance Department, and accepting the new position would cause him to lose the seniority and benefits he had already accrued. As a consequence, Mr. Bordianu asserts that his only option was to "accept a forced retirement without any buyout, and only the regular pay of severance of twenty weeks."

In response to the mandatory job change, Mr. Bordianu sought help from his union, Local 1212, and attempted to contact the union's business manager, Peter Quaranta, by telephone and a letter dated August 2005. In his letter, Mr. Bordianu described how he trained another engineer in his department, sharing all of his knowledge and experience with this employee, and further asserted that the mandatory change in job assignment ignores his seniority in the Broadcast Maintenance Department. Mr. Bordianu also opined that defendant's actions were motivated by "discriminat[ion] [against] me for my age," and he concluded by stating that "[i]t was not my intention to retire yet. There is an outstanding mortgage for my house, to pay, by myself." Mr. Bordianu never heard back from Mr. Quaranta despite several phone calls made to his office.

---

filing is also treated as an exhibit in support of his Complaint, as indicated by the *pro se* complaint form, which counsels that a plaintiff may attach the EEOC filing as additional support for the Complaint.

[2] While Mr. Bordianu stated in his EEOC filing that he was informed of defendant's decision to transfer him in September 2005, all other statements made by Mr. Bordianu, including his Complaint, opposition, and letters written to union officials indicate that the mandatory transfer was presented to him in August 2005. Whether Mr. Bordianu was informed in September or August of 2005 is ultimately irrelevant to the viability of his legal claim, as discussed below.

Plaintiff alleges that Mr. Quaranta was too busy finalizing his own retirement to either pursue Mr. Bordianu's concerns or return his phone calls. Mr. Bordianu continued to work for EBC until retiring on October 21, 2005. Thereafter, Mr. Bordianu received twenty weeks of severance pay.[3]

On June 24, 2006, nearly one year after sending his letter to Mr. Quaranta, Mr. Bordianu wrote to Donald Siegel, the Vice President of the International Brotherhood of Electrical Workers ("IBEW"), the international organization for Local 1212. The letter to Mr. Siegel contained nearly identical facts and allegations as contained in Mr. Bordianu's letter to Mr. Quaranta. Mr. Bordianu wrote that he was ultimately forced to retire in October 2005 as a result of EBC's August 2005 decision to implement a mandatory job change for him. Mr. Bordianu also related that he had the highest seniority in the Broadcast Maintenance Department and yet was told by EBC that refusal to comply with the new assignment would result in his being forced to leave the company. Mr. Bordianu indicated that "my only available other course of action was to accept forced retirement without any buyout, and only the regular severance pay of 20 weeks," and that he "believes that this was an act of age discrimination that WNET perpetrated against me, and I wish for the matter to be reviewed by the IBEW leadership, with appropriate action taken on my behalf."

Shortly thereafter, on July 6, 2006, Mr. Siegel responded by letter on behalf of IBEW, advising Mr. Bordianu that IBEW is not a party to the contract governing the Collective Bargaining Agreement ("CBA") between Local 1212 and defendant EBC. The letter advised Mr. Bordianu that Local 1212 has its own grievance procedures for addressing violations of the CBA and that Mr. Bordianu should contact Local 1212 with his concerns. Mr. Siegel's letter was copied to Mr. Quaranta of Local 1212.

---

[3] Mr. Bordianu's last severance check is dated March 2, 2006, which is approximately twenty weeks following his departure date of October 21, 2005.

Subsequent to receiving Mr. Siegel's letter, Mr. Bordianu again attempted to contact the business manager for Local 1212. Mr. Bordianu was eventually able to get in touch with the new business manager, Keith Morris, and in late July of 2006, he met with Mr. Morris and the union's attorney at the offices of Local 1212. At this meeting, both Mr. Morris and the union attorney suggested that Mr. Bordianu contact the EEOC regarding his belief that he was forced to retire because of his age.

Acting on their suggestion, Mr. Bordianu went to the EEOC on August 4, 2006 and filled out an EEOC Charge of Discrimination form. Mr. Bordianu alleges in his Complaint that he filed this charge on August 4, 2006. However, the date of Mr. Bordianu's notarized signature is November 28, 2006. The only indication on his EEOC filing that he filed his claim with the EEOC on August 4, 2006, is a handwritten date next to his closing signature for the description of why he believes he has been discriminated against.[4]

Mr. Bordianu's EEOC filing elucidates his reasons for refusing the transfer to a different job assignment:

> [o]nce moved to operation I will be placed on the bottom of the operation seniority list, and exposed to be "lay-off" for any subjective reason. It happened in the past: An engineer from engineering maintenance department was transferred to Operations on the bottom of their seniority list 'Lay-Off' and lost his job.

*Id.* at 4. On January 30, 2007, the EEOC mailed Mr. Bordianu a letter indicating that his case had

---

[4] In his opposition to the defendant's motion to dismiss, Mr. Bordianu explains that he initially filed the EEOC form on August 4, 2006, without the requisite notary, but that he had spoken "with Patricia Araujo", an investigator at the EEOC, who insisted that Mr. Bordianu not call her back because of a back log of pending investigations. On November 17, 2006, Ms. Araujo called Mr. Bordianu into the EEOC office and indicated that he needed to re-file his charge because it was not properly signed and notarized. As a result, Mr. Bordianu returned the EEOC's form signed and notarized on November 28, 2006.

been closed because it was not timely filed with the EEOC and issued a "Notice of Right to Sue." Mr. Bordianu received the letter on January 31, 2007, and filed the present action on April 27, 2007.

## DISCUSSION

### I. Standard of Review

On a motion to dismiss, plaintiff's factual allegations must be accepted as true, and the court must draw all reasonable inferences in favor of plaintiff. *Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Thomas v. City of New York*, 143 F.3d 31, 37 (2d Cir. 1998). The court's function is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). As the Supreme Court recently held, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1964 (2007) (internal quotation marks, citations, and alterations omitted). Indeed, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. This "plausibility standard" is a flexible one, "oblig[ing] a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

*Pro se* complaints, "however inartfully pleaded, are held to less stringent standards than formal pleadings drafted by lawyers" and are to be construed liberally on a motion to dismiss. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997). The court must interpret plaintiff's pleadings as "raising the strongest arguments they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). Thus, in light of Mr. Bordianu's *pro se* status, the court will consider both the supporting documents submitted with Mr. Bordianu's

Complaint and facts raised in his opposition to determine whether those facts would be sufficient to overcome defendant's motion to dismiss. *See Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987).

II. **Failure to Timely File Complaint with the EEOC**

Defendant EBC moves to dismiss Mr. Bordianu's Complaint pursuant to Rule 12(b)(6) on the ground that Mr. Bordianu failed to file a charge of discrimination against defendant EBC with the EEOC within the 300-day limit prescribed by the ADEA. In states such as New York, where a state agency is authorized to address employment age discrimination charges, the statute of limitations for filing with the EEOC is 300 days from the date of the discriminatory conduct. *See* 29 U.S.C. §§ 626(2)(d)(2), 633(b); *Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980) (holding that the relevant date for triggering the statutory limitations period for Title VII is the date on which the alleged discriminatory conduct occurred, and not necessarily the date of termination); *Kassner v. Second Avenue Delicatessen*, 496 F.3d 229 (2d Cir. 2007) (laying out the applicable 300-day statute of limitations in New York for filing an age discrimination charge under the ADEA with the EEOC).

In New York, the ability to bring suit under the ADEA in federal court is generally foreclosed by failure to timely file a charge of discrimination with the EEOC within the required 300-day limit. *See, e.g.*, *Kassner*, 496 F.3d at 237-38; *Miller v. Int'l Telephone & Telegraph Corp.*, 755 F.2d 20, 23 (2d Cir. 1985), *cert. denied*, 474 U.S. 851 (1985) (observing that "[n]o action based on a claim of age discrimination may be brought in federal court unless the claim was properly raised with the EEOC, i.e., within the permissible time limit for filing with the EEOC."). "Where dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted . . . ."

6

*Ghartey v. St. John's Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). However, "[t]he pleading requirements of the Federal Rules of Civil Procedure do not . . . compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Instead "Rule 8 requires a plaintiff to provide only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8). Thus, the issue raised in this motion to dismiss is whether Mr. Bordianu has presented any facts indicating that he filed his charge with the EEOC within the requisite 300-day deadline.

In the context of discriminatory termination, the 300-day limit begins from the date upon which the employee receives a "definite notice of the termination, not upon his discharge." *Miller*, 755 F.2d at 23. Thus, the "proper focus" for the court is "the time of the discriminatory act, not the point at which the consequences of the act become painful." *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981). Where the discriminatory decision has been made and communicated to the employee, the "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Ricks*, 449 U.S. at 257 (holding in the context of a race discrimination claim brought by a professor denied tenure that the date on which plaintiff learned he was denied tenure and believed this decision was motivated by discrimination commenced the limitations period and not the date of his eventual termination). In "[d]etermining the timeliness" of a plaintiff's EEOC filing, the court must "identify precisely the unlawful employment practice of which [the plaintiff] complains." *Id.* at 257. Here, Mr. Bordianu asserts that defendant's decision that he must either move to a different department and job or leave EBC was motivated by age discrimination. Mr. Bordianu has consistently maintained that this decision was made known to him in August 2005, and at no time has Mr. Bordianu alleged that his retirement, on October 21, 2005,

7

was anything more than a natural consequence of the original discriminatory decision complained of in Mr. Bordianu's EEOC filing.

Oral notification to an employee of an employer's decision to terminate the employee may constitute definitive notice of termination for the purposes of triggering the 300-day limit for filing a complaint with the EEOC. *Miller*, 755 F.2d at 23. In *Miller*, the Second Circuit found that the 300-day period for a *pro se* claimant commenced on the date he was orally advised by his supervisor, following claimant's refusal to transfer to a different position, that he should start looking for another job and plan on leaving the company's employment within three to six months. *Id.* at 22. In August 2005, Mr. Bordianu was informed by management that he could either take the new job position or leave the company. Mr. Bordianu's August 2005 letter to Mr. Quaranta confirms he knew of defendant's mandatory job transfer plan for him and that he believed that the decision was motivated by age discrimination. The date on which Mr. Bordianu received notice of the mandatory transfer, whether orally or in writing, was enough to commence the statute of limitations period. Presumably, Mr. Bordianu received notice of defendant EBC's decision on August 17, 2005, the date that Mr. Bordianu listed as the earliest date on which discriminatory conduct occurred. Even if Mr. Bordianu was not notified until September 2005, another date indicated in his EEOC filing, he would still fall outside the 300-day filing limitation. Regardless of the particular date, by the end of August 2005, Mr. Bordianu's understanding of EBC's position was clear—there was nothing tentative or vague as to EBC's position regarding the mandatory transfer.

Finally, any argument that the limitations deadline should be pushed forward because Mr. Bordianu was trying to instigate a grievance procedure under the CBA between Local 1212 and defendant EBC is unavailing. The "statutory time period for filing a charge of employment

8

discrimination with the EEOC" is not tolled "during the pendency of grievance or arbitration procedures under [a] collective-bargaining contract." *Int'l Union of Electrical, Radio & Machine Workers v. Robbins & Meyers, Inc.*, 429 U.S. 229, 236 (1976) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 (1974)).

### III. Equitable Tolling

The 300-day limitation period for filing a charge of discrimination with the EEOC is not to be construed as a "jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). While Mr. Bordianu has not argued that equitable tolling should be applied here, this court will consider whether Mr. Bordianu has pled any facts suggesting that his untimely filing may be excused under the doctrine of equitable tolling.

Equitable tolling is permissible in "rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003). Such rare and exceptional circumstances have been recognized by the Second Circuit where: (1) the "plaintiff 'actively pursued judicial remedies' but filed a defective pleading during the specified time period," *Brown v. Parkchester S. Condos*, 287 F.3d 58, 60 (2d Cir. 2002) (quoting *South v. Saab Cars USA, Inc.*, 28 F.3d 9, 11-12 (2d Cir. 1994)); (2) the plaintiff was prevented in some "extraordinary way from exercising his rights," such that the facts presented by the plaintiff "show that it would have been impossible for a reasonably prudent person to learn that his discharge was discriminatory," *Miller*, 755 F.2d at 24; (3) the plaintiff suffered from a medical or mental impairment that prevented plaintiff from timely filing, *see, e.g.*, *Chapman v. ChoiceCare L.I. Term Disability Plan*, 288 F.3d 506, 508 (2d Cir. 2002); (4) the plaintiff was "actively misled by his employer," *Miller*, 755 F.2d at 24, or "affirmative misconduct on the part of the defendant . . . lulled plaintiff into inaction," *South,* 28 F.3d at 11; and

9

(5) a mistake or misinformation by the EEOC caused the plaintiff to miss the filing deadline, *Harris v. City of New York*, 186 F.3d 243, 248 n.3 (2d Cir. 1999). In addition to determining whether the plaintiff has demonstrated extraordinary circumstances warranting the application of equitable tolling, the court must also consider whether the complainant "acted with 'reasonable diligence' during the time period sought to be tolled. *Zerilli-Edelglass,* 333 F.3d at 80; *Chapman*, 288 F.3d at 512. The plaintiff bears the burden of demonstrating that exceptional circumstances prevented him from timely filing a charge with the EEOC. *Zerilli-Edelglass*, 333 F.3d at 80; *Taylor v. Rite Aid Pharmacy*, No. 05-CV-5251, 2006 U.S. Dist. LEXIS 69894, at *3 (E.D.N.Y. 2006) (unpublished).

Because Mr. Bordianu has not pled any facts that might suggest he was prevented in some extraordinary manner from exercising his right to timely file his claim with the EEOC, he has failed to demonstrate that equitable tolling is warranted. Moreover, the facts pled by Mr. Bordianu do not suggest that he has exercised reasonable diligence in pursuing his claim. For example, Mr. Bordianu alleges that he did not know about the EEOC until he spoke with Local 1212's new business manager, but he waited nearly a year after his initial letter to Mr. Quaranta at Local 1212 went unanswered before writing to the Vice President of IBEW. Despite believing he was being forced to retire and that defendant was discriminating against him because of his age, the pleadings indicate that Mr. Bordianu failed to diligently pursue his legal options.

**IV.     Equitable Estoppel**

The equitable estoppel doctrine prevents a defendant from using statute of limitations as a defense where "the plaintiff knew of the existence of the cause of action but the defendant's conduct caused the plaintiff to delay the bringing of the lawsuit." *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995). Equitable estoppel has been used in cases where the defendant has made misrepresentations to the plaintiff regarding the limitations period or acted in such a manner as to

10

cause the plaintiff to believe that commencing litigation is unnecessary. "Unlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment, equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing his lawsuit." *Dillman v. Combustion Engineering, Inc.*, 784 F.2d 57, 60-61 (2d Cir. 1986) (holding that ADEA plaintiff had failed to present any evidence allowing for the application of the doctrines of equitable tolling or equitable estoppel). Mr. Bordianu has failed to plead facts that could support the inference that Defendant EBC acted in such a way as to cause him to delay filing a charge with the EEOC.

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss the complaint is granted. The Clerk of Court is ordered to close the case.

**SO ORDERED.**

_____/s_____
**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
      April 24, 2008